**Response to Motion to Dismiss and Amended Complaint**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS



JUN 3 0 2005

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Andre L. Kilpatrick

    Plaintiff,

-vs-    )    04-1053
    )
McLean and Sangamon Counties:    )
William Decardy, Marinna Wright,    )
David Webber, Wanda Passini,    )
Shad Wagehoft, Shuntua Stonewall,    )
Keith Gehrand, Ronald Swann    )
Jeff Longfellow, Ronald Stoll, Deborah Hospelhorne    )
Gregory Passini, Walter Clark,    )
Helen Mamarchev, Richard Olshak, Daniel Caste,    )
Sandra Little, Rick Lewis, Pat Barr,    )
Illinois State University, John Mccullough,    )
Emily Mcquillan, Robert Steigmann, and John Turner,    )
    )
    Defendants.    )

<u>Respose to Motion to Dismiss and an amended complaint</u>

Now Come the Plaintiff, Andre L. Kilpatrick to challenge the motion to dismiss

1) The dismissal of the instant case would be **too severe** of a sanction to impose because plaintiff failed to file summonses in 120 days. Therefore, even if plaintiff cannot show good cause a permissive extension should be granted.
2) Plaintiff's claims are not time barred with regards to an overall conspiracy of all defendants
3) Defendants request that this case be dismissed so that the police, the trial court and the appellate court will not be held accountable for a conspiracy and an effort to preclude a lawsuit by plaintiff.
4) Plaintiff asserts that the trial court of Bloomington (prosecutor (Marinna Wright) and Judge William Decardy), along with Appellate Justices Robert Steigmann, John Turner, and John McCullough worked in collusion to determine the out come of plaintiff's jury trial and to affirm a bogus conviction.

5) Plaintiff alleges that conduct by the police, trial and appellate court is so egregious that this case must not be dismissed in an effort to show lack of respect for the Civil and Constitutional rights of plaintiff because he is African-American
6) The dismissal of any defendant will prejudice plaintiff's allegation of a conspiracy
7) In addition to failure to deliver summonses in a timely manner, Defendant's attorney further alleges that this case must be dismissed because some defendants circumstances have changed. However, plaintiff asserts that the egregious actions taken against him are preserved.
8) Defendants (ISU police) seek dismissal of instant case after a judgement of default has been entered against them
9) Complaint is not time- barred against Marinna Wright because the allegations of misconduct occurred approximately July16, 2002 and plaintiff's complaint was file on October 7, 2001
10) Complaint against Appellate Justices Robert Steigmann, John McCullough, and John Turner are not time-barred as the misconduct by these "Justices"occurred Januuary 4, 2004. They were added as defendants in plaintiffs amended complaint
11) There is no evidence that Appellate Justices Robert Steigmann, John McCullough, John Turner were served a copy of the summons and the complaint
12) Appellate justices made a racist remark during oral arguments
13) Plaintiff's claims are not time-barred because of allegations of conspiracy
14) Plaintiff's claim of a conspiracy by ISU police is supported by the fact that ISU police officer (David Webber) who initiated the "so-called investigation" on October 7, 2001 at plaintiff's apartment has been fired from the ISU police department and convicted of felony theft

**Facts to support allegations of conspiracy by the Normal Police Department and excessive for by Gregory Passini**

In April of 1998 Deborah Hospelhorne of the Normal Police Department (NPD) used an eavesdropping device to set plaintiff up on four counts of criminal sexual assault against two women. They somehow recruited a black female acquaintance to set up plaintiff on sexual assault charges just so they could so arrest him for the sexual assault of the alleged white female. At trial the detective admitted that she wrote down things for the black female to say and things they needed plaintiff to say in order for him to be arrested. Ultimately at a jury trial plaintiff was acquitted after jurors deliberated for less than one hour. The second case involving the white female was dismissed 2 months later. After acquittal and before dismissal of second case, officer Jeff Longfellow of NPD pulled plaintiff over for allegedly improper display of a license plate. Officer Longfellow then told plaintiff's acquaintance to step out of the car,as she was the driver and plaintiff was the passenger. He told plaintiff's acquaintance that he needed to take her to the police station to write her a citation for underage drinking as she was 20 years old at the time. A few days later plaintiff saw acquaintance and asked if officer Lonfellow issued her a citation. Plaintiff's acquaintance said 'no, but they (NPD, including Longfellow) told me to stay away from you because you are a rapist". After plaintiff was acquitted police officer pulled him over at least 10 times ( for frivolous reasons) all in an effort to

intimidate plaintiff and run him out of town because they were upset that plaintiff had a sexual relationship with a white female.

With regards to plaintiff's claim of injury to wrist by Normal Police Office Passini; if Normal police officer Gregory Passini had used proper handcuffing procedure then plaintiff would not have a permanent lump on his wrist and suffer from nerve damage. Normal Police officer Passini acted with malice and intended to inflict injury on plaintiff. Plaintiff's claim against Normal police officer Passini fall under 42 U.S.C. § 1983 claiming that officer Passini used excessive force when arresting plaintiff. The Supreme Court has held that excessive force claims are best analyzed under the Fourth Amendment's protection against unreasonable seizures. *Graham v. Connor*, 490 U.S. 386, 394 (1989). In determining whether excessive force was used, courts must ask whether the officer's actions, in light of the totality of the circumstances, were objectively reasonable. *Id.* at 396-97. Because this is a test of objective reasonableness, the underlying motivations of the officer in making the arrest should not be examined. *Id.* at 397. In determining whether an officer's actions were reasonable, the specific facts of each case are key. *Id.* at 396. Courts should pay particular attention to "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* While courts must look to the totality of the circumstances in determining whether a seizure was reasonable, they must be sure to view those facts "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

In the instant case plaintiff asserts that he posed no particular threat to police officers because he been maced approximately 10 times, beaten profusely on the legs with batons and was not actively resisting arrest at the time that he was being handcuffed. Therefore officer Passinni acted maliciously in that he intended to inflict pain and injury on plaintiff

### Facts To Support Allegations of a Conspiracy by The ISU Police

After acquittal of charges stemming from the set up by NPD in the summer of 1998 an Illinois State University (ISU) detective came to plaintiff's apartment at E-56 Cardinal Court in Normal and told Plaintiff that he "fit the description of a big black man who was seen naked on campus with a duffle bag and used the duffle bag to steal a computer." The ISU detective then asked plaintiff if he could search his apartment. Plaintiff refused the detectives request absent a search warrant. The detective left and never returned. This was the same tactic that ISU police used to run plaintiff's friend Lenard Henley out of town without his degree.

On October 6, 2001 at approximately 11:00 pm, former ISU police officer David Webber and ISU police officer Wanda Passini came to plaintiff's apartment at E-56 because of a loud music complaint. David Webber and Wanda Passini returned to plaintiff's apartment approximately 3 hour later (October 7, 2001), this time pretending to be investigating an incident where a grill had been thrown over a balcony. Former ISU police officer David

Webber lied under oath during plaintiff's jury trial and claimed that he was not with Wanda Passini when she investigated the loud music complaint. At trial, Wanda Passini also alluded to the fact that David Webber was not with her when she came to plaintiff's apartment for the loud music complaint. Reasoning that an admission would support an allegation of continual harassment and a conspiracy by plaintiff. After ISU officers Passini and Webber returned to plaintiff's apartment for the second time, pretending to be investigating an incident involving a grill being thrown from a balcony, they demanded that plaintiff allow them in his apartment to check the welfare of plaintiff's guest (a white female). Even though they were supposedly at plaintiff's apartment to investigate a grill being thrown over the balcony. After refusal of plaintiff to allow officers to enter his apartment absent a search warrant, ISU police officer told plaintiff that he was "under arrest for resisting arrest". Plaintiff then told police that he gave up because he did not want to go to jail for an incident that was staged by officers Webber and Passini. After plaintiff was told he was "under arrest for resisting arrest" plaintiff refused to be handcuffed. Officer Webber and Passini responded by spraying plaintiff with mace. Wanda Passini lied again under oath and claimed that she did not mace the plaintiff. Police then chased plaintiff who collided with Normal Police officer Ronald Stoll and then tumbled down the stairs. Once down stairs plaintiff was beaten profusely on the legs by Former ISU police officer David Webber and Normal police officer Ronald Stoll as he **backed up** against a wall outside his complex. Plaintiff now suffers from nerve damage in his thighs as a result of the beating. Plaintiff was also maced at least 10 more times by various ISU and Normal police officers acting as back-up. Plaintiff then swung out in self-defense and struck officer Stoll are officer Stoll grabbed plaintiff by the collar of his shirt. After plaintiff was arrested, police searched his apartment and found absolutely nothing. Plaintiff's guest fled without police ever seeing her. There was never any evidence that plaintiff was involved in any incident because the so-called incident which supposedly brought the police to plaintiff's apartment was staged by officers Webber and Passini, and ISU student Emily McQuillan.

Plaintiff was charged with three counts of aggravated battery against Normal police officer Stoll, ISU police officers Webber and Wagehoft. In addition, plaintiff was charged with two counts of resisting arrest and one count of criminal damage to property. Ultimately, plaintiff was acquitted of aggravated battery against former ISU police officer David Webber and Shad Wagehoft and also of criminal damage. However, plaintiff was convicted of aggravated battery against Ronald Stoll and two counts of resisting arrest

**Facts To Support Allegations collusion by Judge William Decardy and Matrinna Wright to determine the outcome of Plaintiff's jury trial to preclude a lawsuit by plaintiff**

## Part I
In Illinois, a person is not entitled to resist arrest even if the arrest is unlawful. However, an exception exists where a police officer uses excessive force to effectuate an arrest.

Plaintiff's defense at trial was that police officers used excessive force to effectuate his arrest and that he was not guilty of aggravated battery against Normal police officer Ronald Stoll because he acted in self-defense. Prosecutor Marinna Wright argued that Plaintiff was not entitled to the self-defense instruction as a matter of law because he did not show that excessive for was used by police officers. Judge William Decardy overruled prosecutor Marinna Wright and stated that the self-defense instruction were supported by the evidence and that plaintiff was entitled to the self-defense instructions as a matter of law. This ruling was made in the morning on the second day of plaintiff's jury trial. On the first day of plaintiff's jury trial National Action Network representative David Lowery called the actions of the police outlandish and told Steve Silverman, reporter for the Pantagraph newspaper that plaintiff planned to file a Federal Discrimination lawsuit against the police and ISU. The article was printed the following day (second day of trial). On the second day of plaintiff's trial the article was in the Pantagraph, and it read in part, that plaintiff was racially profiled and that he planned to file a lawsuit through the National Action Network. Judge William Decardy ruled that plaintiff was entitled to the self-defense instruction as a matter of law. This ruling was made before he and prosecutor Marinna Wright read or were informed of the article in the Pantagraph newspaper. After they were made aware that plaintiff was going to sue, at recess Judge William Decardy and Marinna Wright worked in collusion on an elaborate scheme to withdraw the self-defense instruction. Reasoning that a conviction would preclude a lawsuit by plaintiff. Case in point, Marinna Wright returned after the lunch recess and asked Judge Decardy to reconsider giving plaintiff the self-defense instruction, not because plaintiff was not entitled to the instruction as a matter of law, but because she had not received notice of the affirmative defense through discovery (Even though she later admitted that she had knowledge of the affirmative defense through discovery 3 months prior to plaintiff's trial). Judge William Decardy then changed his ruling and withdrew the self-defense instruction and their plan worked and as a result plaintiff was convicted of aggravated battery because he had no defense; a constitutional violation. During the statement of allocution judge Decardy acknowledged that plaintiff planned to file a lawsuit. Plaintiff never mentioned in court that he planned to file a lawsuit. Therefore, as plaintiff claims Judge Decardy found out through the Pantagraph newspaper that he planned to sue. There is little doubt that if Judge William Decardy had known that plaintiff was going to sue before his trial began, he would not have awarded plaintiff the self-defense instructions in the first place. The trial court knew that they could commit acts of misconduct and rely on the appellate court to affirm a bogus conviction. Similarly the appellate court knew that they could rely on the clerk of the Supreme Court to cover for there misconduct thereby relieving them and the trial court of any liability for their misconduct.

## Part II

After the conviction, plaintiff was sentenced to 180 days in the county jail with 30 days to be served instanter (no day for day credit, even though plaintiff was entitled to day for day credit), 30 months of probation and ordered to undergo anger management

counseling and ordered to pay $14,675.44 in restitution to the ISU police department for injuries sustained by ISU police office Shad Wagehoft.

Meanwhile, plaintiff's attorney Harvey Welch filed a motion for a new trial, alleging that the judge erred by denying plaintiff the self-defense instructions based on the prosecutor Marinna Wright's allegation that she had not received notice of the affirmative defense through discovery. Harvey Welch also asserted that restitution to a police officer was improper. At the motion for plaintiff's new trial, Marinna Wright admitted that she had in fact been made aware of plaintiff's affirmative defense through discovery 3 months prior to plaintiff's trial. Since prosecutor Marinna Wright admitted there was no discovery violation, one would think that plaintiff would be awarded a new trial, however, that was not in the plan of Judge Willian Decardy and Prosecutor Marinna Wright. Marinna Wright then as the judge to reconsider his initial ruling that he made during the trial where he stated that plaintiff was entitled to the self-defense instruction. Judge William Decardy then changed the ruling that he made five weeks earlier at plaintiff's trial and now claimed that plaintiff was not entitled to the self-defense instruction, which is the exact opposite of what he said when he awarded the plaintiff the self-defense instructions at trial. Judge Decardy then denied plaintiff's motion for a new trial and refused to reconsider the restitution issue. Plaintiff then appealed to the appellate court for justice.

## Part III
**Facts To support allegations that the appellate court justice have no regards for plaintiffs Constitutional or Civil Rights because plaintiff is African-American. Furthermore, Appellate in Justices had no intention of properly reviewing plaintiff's case. Appellate court simply acted in collusion with the trial court to deny plaintiff justice**

Several legitimate issues were raised during plaintiffs brief to the appellate court. On each and every issue the appellate justices used tortured logic to affirm each issue that was raised on appeal. However, there was one issue that the appellate justice could not use twisted logic to justify in affirming the conviction and that was the issue where prosecutor Marinna Wright admitted in court that she misrepresented the court when she claimed that she had not received notice of plaintiff's affirmative defense (self-defense), when in fact she later admitted that she had received notice of the affirmative defense 3 months prior to plaintiff's trial. Since there was no way for the appellate justices to justify this admission of misconduct by prosecutor Marinna Wright, they simply overlooked the issue as if it did not even exist.

The other issue is the restitution issue. In every case that has been presented to each and every appellate court district of Illinois (Including the 4th District) they have consistently held that a police officer is not a victim within the meaning of the restitution statute and is not entitled to restitution. However, only in plaintiff's case have they gone against there own laws and said that a police officer **is** a victim within the meaning of the restitution statute. This ruling places the 4th district appellate court in direct conflict with

every other appellate court district in Illinois including their own district. Furthermore, leave of appeal was denied to the Supreme Court (no surprise), in order to ensure that plaintiff's case would not heard by the Supreme Court of Illinois. If leave of appeal would have been granted then the Supreme Court would have had to review whether a police officer is a victim within the meaning of the restitution statute. Which means that plaintiff's case would have been reviewed in its entirety and overturned.
Plaintiff assert that there is no way for the appellate nor the clerk of the Supreme court of Illinois to justify placing themselves in direct conflict with every other appellate court district in Illinois, including there own district, other than what plaintiff has alleged and that is to aid the trial court in Bloomington and relieve them of liabilities of misconduct and to keep plaintiff convicted to help block plaintiff's lawsuit. Also worth noting is that there is **no** published opinion by the appellate court on this case (no surprise).
Finally the appellate justices made a racist remark when they told plaintiff's appellate attorney Gary Peterson that "the police had the right to beat plaintiff into submission". Had the appellate justices done their job and actually read plaintiffs brief, they would have known that not only did the police not have the right to beat plaintiff into submission, that incident which brought the police to plaintiff's apartment at E-56 Cardinal Court was staged by two corrupt ISU police officers and that the incident was precipitated by police harassment and a false arrest.

## Part IV
### Facts to support discrimination by Illinois State University

After the staged incident at plaintiff's apartment on October 7 2001, Illnois State University (ISU) officials evicted plaintiff from apartment and expelled plaintiff from the university without due process. Plaintiff was later readmitted by Helen Mamarchev, Vice President of Student affairs and told that he would only be allowed to attend the science building and the library. Plaintiff was told that if he was seen anywhere else on campus the expulsion would be reinstated. Plaintiff alleges that the university along with the police of ISU and Normal tried to "run" plaintiff out of the town of Normal without his degree in chemistry. Plaintiff further alleges civil right violations by ISU in that he was denied full and equal access to a federally funded institution

### Conclusion I

Defendants now seek to employ the same tactics that the police, trial and appellate court used and that is to relieve themselves of any responsibility by having this court to cover for them by dismissing this case. However, plaintiff asserts that even if he could not show due cause for a delay in serving his summonses, a permissive extension is warranted, because of the nature of the allegations. Also, if this case was not allowed to proceed, the

defendants would be relieved of conduct that is outrageous that it has resulted in a complete breakdown in the fairness and administration of justice in our judicial system. Plaintiff asserts that this disregard for due process is mainly because of vested interest and the fact that he is Afican-American.

   The police committed misconduct, the trial court covered for the police after they read or were informed through the town newspaper that plaintiff was planning to sue, the appellate court then covered for the trial court and finally the clerk of the Supreme Court covered for the appellate court. Therefore, plaintiff Prays to this Honorable court that for once he can receive fairness and justice…fairness and justice that was denied by the "Justice" system of Central Illinois (Bloomington and Springfield). In addition to the judgment that plaintiff has requested Plaintiff also seeks any Declaratory, Injunctive or any other form of relief that this court sees fit.


Conclusion II

ISU police along with the Normal police did every thing imaginable in an effort to run plaintiff out of town without his degree. They were racist and hateful of the fact that some of the female that palintiff dated were white females. They (ISU and NPD) set plaintiff up in 1998 and thought that that would run plaintiff out of town. The police pulled plaintiff over regularly, hoping that he would be intimidated by the harrassment. After a failure to convict in 1998, right before plaintiff was to graduate, the police finally succeed in making a conviction "stick" against plaintiff by using a corrupt court system of Bloomington and Springfield to cover for them.